## The New York, Chicago and St. Louis Railroad Co.

*v.*

## Michael Blumenthal.

*Filed at Ottawa October 11, 1895—Rehearing denied March 13, 1896.*

1. RAILROADS—*drover carried with stock is a passenger.* One traveling, by consent of a railroad company, upon a freight train, in charge of cattle which are being transported for him, is a passenger for hire, whether supplied with a drover's pass or not.

2. SAME—*same rule of negligence applies to freight as to passenger train.* The rule of liability for negligent injury to a passenger upon a freight train is the same that applies where the train is devoted exclusively to passenger service.

3. SAME—*proof of injury to passenger establishes negligence prima facie.* Injury to a passenger during the course of his transportation upon a railroad, caused by apparatus furnished by and under the control of the railroad company, raises a presumption of negligence, the burden of rebutting which rests upon such company.*

4. EVIDENCE—*particular facts showing negligence prima facie.* A *prima facie* case of negligence on the part of a railroad company arises when a passenger on a freight train, in charge of cattle, is injured by being caught between two cars while he is descending the ladder to look after his cattle, while the train is stopping for water.

5. INSTRUCTIONS—*cannot take questions of fact from jury.* Instructions that certain specified facts constitute negligence, and instructions by which the sufficiency of the evidence is passed upon by the court instead of leaving it to the jury, are properly refused.

6. APPEALS AND ERRORS—*when admission of improper evidence will not reverse.* Evidence cannot be complained of by a party who opposed its exclusion and objected to its withdrawal from the consideration of the jury.

*N. Y., C. & St. L. R. R. Co.* v. *Blumenthal,* 57 Ill. App. 538, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

---

*As to the presumption of negligence from occurrence of accidents, there is a note with the case of *Barnowski* v. *Helson,* (Mich.) 15 L. R. A. 33, which includes cases of injury to passengers.

This is an action, brought by appellee against the appellant company to recover damages for a personal injury. Verdict and judgment in the trial court were in favor of the plaintiff, and the judgment has been affirmed by the Appellate Court whence the case is brought here by appeal.

The declaration charges that plaintiff is a cattleman by trade, and was engaged in the business of droving cattle from one station to another on January 10, 1891; that, on said day, he was a passenger on a freight train of the defendant, traveling from Chicago to New York, and was looking after a lot of cattle, which he had shipped thereon as a passenger with the consent of defendant; that, on the morning of that day, the train stopped at Brockton Station in New York, when plaintiff proceeded, as was his custom, to inspect his cattle, and was obliged, in doing so, to walk on top of the cars.

The first count avers, "that it was the custom of the defendant, at said station, to have trains stop to take on water; that, as soon as the train stopped to take on water, if the train had to go backwards or forwards to get into position so as to take water from the tank, in either of said cases it was the custom and duty of the defendant to ring the bell or blow the whistle, to notify parties of the movement of the train. Plaintiff further avers that, relying on said custom and duty, he was descending on the ladder of one of the cars for the purpose of inspecting the cattle, when, without any sign or warning or notification whatsoever, the said engineer in charge of said train suddenly started said train, whereby plaintiff was caught between two of the cars of said train, by and through the carelessness and negligence of said defendant, by means whereof the plaintiff was then and there crushed, wounded and bruised, etc., and permanently injured," etc.

The second count avers "that it was plaintiff's duty to go from car to car to look after the cattle, and he was

employed for that duty by the owners of the cattle who had shipped the same; that two of the cars were in a defective and ruinous and dangerous condition, owing to the bumpers being out of repair, so that when the said train of cars was backed up or pushed forward, the said two cars would go within six inches of each other, owing to the defective condition of said bumpers, which defective condition of said bumpers was well known to the said defendant, and which was then and there unknown to the plaintiff; that the ladder on said two cars for getting down from one car to another, or to look from one car to another, was on the end of the cars, and about a minute after said train had stopped to take in water at Brockton Station, plaintiff, as was his custom, began to descend from one of said cars on the end ladder, there being no other ladder on the said car, and just as the plaintiff had commenced to descend on said ladder the said defendant suddenly and without warning backed said train of cars, and by reason of the defective condition of said bumpers on said two cars, from one of which the plaintiff was descending as aforesaid then and there, said cars came so close together that they crushed the said plaintiff against said ladder, inflicting internal injuries, etc., as alleged in first count."

The third count avers, "that the plaintiff walked to the first car containing the cattle, and was about to descend the ladder of said car for the purpose of examining all his cattle, which were in twenty cars of said train, and as he began to descend the first car, which was next to the dead-freight car, the defendant, without any warning or sign whatsoever, suddenly backed the train, causing the dead-freight car to bump against the cattle car which plaintiff was descending, and by means of such negligence in not giving any warning of the movement of said train, and also by means of the negligence of the defendant in having improper bumpers on the dead-freight car, which bumpers did not correspond

with the bumpers on the cattle car which plaintiff was descending, in consequence of which want of correspondence of said bumpers on said dead-freight car and said cattle car then and there caused the said two cars to come very close together, whereby plaintiff was caught between said dead-freight car and said cattle car, whereby he was injured as alleged in first count."

Additional count charges that plaintiff walked to the front car containing the cattle after said train had come to a full stop, and plaintiff was about to descend the ladder of said first or front car for the purpose of examining the cattle; that he had begun to descend the car which was next to the dead-freight car, when the defendant, without any warning or signal whatever, suddenly and negligently backed said train, driving said dead-freight car against the cattle car from which the plaintiff was descending, by means of which negligence the defendant, in not giving any warning or signal of the movement of the said train, and also by means of the negligence of the defendant in having improper bumpers on the said freight car, which bumpers did not correspond with the bumpers on the said cattle car from which plaintiff was descending, caused said two cars to come very close together, whereby plaintiff was caught between the two cars and injured, and prevented from attending to and transacting his affairs and business, and totally disabled from attending to any sort of business whatever.

Walker & Eddy, for appellant:

The rules applicable to facts such as those under consideration are stated in the following authorities: Beach on Contrib. Negligence, (2d ed.) sec. 152; *Railroad Co.* v. *Letcherburg*, 69 Ala. 106; *Railroad Co.* v. *Singleton*, 66 Ga. 252; *Railroad Co.* v. *Hendricks*, 26 Ind. 228; *Lucas* v. *Railroad Co.* 6 Gray, 64; *Railway Co.* v. *Shacklett*, 19 Ill. App. 145; *Railroad Co.* v. *Hazzard*, 26 Ill. 373; *Railroad Co.* v. *Yarwood*, 15 id. 468; *Railroad Co.* v. *Lane*, 83 id. 448.

Moses Salomon, and Brandt & Hoffman, for appellee:

The negligence of appellant in having its cars in such a condition that they would crush a man descending between them on a ladder was so great that it would have rendered appellant liable if the injury had been to one of its brakemen or any of the train crew in its employ. *Railroad Co.* v. *Welch,* 52 Ill. 183; *Railroad Co.* v. *Gregory,* 58 id. 272; *Railroad Co.* v. *Russell,* 91 id. 298; *Railroad Co.* v. *Johnson,* 116 id. 206.

The payment of money by the person transported is not essential, (*Cleveland* v. *Steamship Co.* 68 N.Y. 306; *Hart* v. *Railroad Co.* 40 Miss. 391,) for any valuable consideration moving from the person injured will render him a paying passenger, such as the fact that he is traveling as a drover in charge of his cattle which the railway was transporting for hire. *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Railroad Co.* v. *Horst,* 93 U. S. 291; *Railway Co.* v. *Selby,* 47 Ind. 471; *Railroad Co.* v. *Curran,* 19 Ohio St. 1; *Mastin* v. *Railway Co.* 14 W. Va. 180; *Railway Co.* v. *Miles,* 40 Ark. 298; *Railroad Co.* v. *Henderson,* 51 Pa. St. 315; *Goldey* v. *Railroad Co.* 30 id. 242; *Railway Co.* v. *Nickless,* 71 Ind. 271; *Flinn* v. *Railroad Co.* 1 Houst. 469; *Railway Co.* v. *Garcia,* 62 Tex. 285; 21 Am. & Eng. Ry. Cases, 384.

It is not essential that he was with the consent of the railway company traveling on a freight train in charge of stock or goods carried by the company for him. *Railroad Co.* v. *Beaver,* 41 Ind. 493; *Lawson* v. *Railroad Co.* 64 Wis. 447.

The carrier is bound to exhibit the same diligence and skill towards passengers of this class as towards passengers who pay money for their tickets. *Railroad Co.* v. *Brown,* 123 Ill. 162; *Railroad Co.* v. *Horst,* 93 U. S. 291.

Whether appellant is liable to appellee as a carrier of passengers is not an open question in this State. *Railroad Co.* v. *Arnol,* 144 Ill. 472.

Mr. Justice Magruder delivered the opinion of the court:

The first contention of the appellant is, that the court refused to give the first instruction asked by the defendant below, which was that the evidence was insufficient to maintain the plaintiff's case as charged in his declaration, and that, therefore, the verdict should be for the defendant. We think that there was sufficient evidence, tending to establish a cause of action, to justify the submission of the case to the jury.

Twenty cars of the freight train were carrying the cattle of which plaintiff had charge. Between these and the engine were three or four box cars containing dead freight. The collision causing the injury occurred between the forward cattle car and the hindmost dead-freight car. At the rear of the cattle cars was a caboose in which appellee rode between stations. When the train stopped for coal, water or any other purpose, appellee visited the cattle cars by walking beside them to see if the cattle were in proper condition. Cattle thus transported must have light and air, and must be fed and watered; they become frightened and unmanageable; they kick or gore, or fall down and cannot rise; the strong crowd and suffocate the weak; they suffer from the mode of locomotion and the length of the journey. (3 Am. & Eng. Ency. of Law, p. 2). Here, the ordinary way of getting the cattle up if they were down was by walking by the sides of the cars when the train stopped, and punching the cattle with a pole. Appellee carried a pole for that purpose. There were, however, doors on top of the cars—two doors on the top of each car, "one on each end opposite each other on each side of the roof." These doors were for use by the drover while the cars were in motion, if any emergency required their use. There was a door on each side of each car, but no door at either end of each car. There were no ladders on the sides of the cars. The ladders were at the ends of the

cars. When the drover was on top of a car at the time of the stopping of the train, the only way, in which he could alight so as to walk on the ground and examine his cattle from the sides of the cars, was by descending on the ladder at the end of the car. One of appellant's witnesses testifies, that the "drover generally gets down, when we stop for coal or water at a place, as soon as he can; it is his duty to do so. He is delaying himself when he delays us." At Westfield, eight miles west of Brockton, appellee commenced with the rear cattle car next to the caboose to examine his cattle, but had only examined two or three cars when the train started; and he was obliged to enter the caboose. Knowing that the train would stop at Brockton from ten to twenty minutes, he walked on top of the train until he reached the forward car of the twenty, and, when the train stopped, attempted to descend by the ladder at the forward end of the car, so that, in walking back and inspecting the cattle, he might reach the caboose about the time the train would start. When appellee commenced his descent of the ladder, there was sufficient room for his body between the car he was on and the car immediately in front. When he had descended to a point where his waist was on a level with the top round of the ladder, the train was moved, so that the space between the two cars was reduced to about six inches, and his hips and bowels were crushed between them.

The evidence tends to show, that, under all the circumstances, the appellee had a right to be on top of the freight car where he was, and to descend by the ladder at the end of the car when the train stopped. The real cause of the injury was the fact that, when the cars of the train were shoved together, the space between them was too narrow to admit of a safe descent upon the ladder. The declaration sufficiently charges that the cars were thus brought so close together as to produce the injury. It makes no difference whether the narrowness

of the space between the cars when shoved together was brought about by the bumpers being out of repair or otherwise defective, or by a want of correspondence between the bumper on the cattle car and that on the dead-freight car, or by any other cause.   The plaintiff may aver in his declaration as many grounds of recovery as he sees proper, but it is not necessary to prove all that is alleged. It is sufficient to prove enough of the negligence charged to make out a case.   (*Weber Wagon Co.* v. *Kehl*, 139 Ill. 644).

We are relieved from the consideration of the question as to the duty of a railroad company to furnish its employees and servants with safe machinery and structures, and with a safe place and surroundings for the performance of their duties, and as to the assumption by such servants of the ordinary hazards and risks of their employment. For, although the evidence tends to show, that appellee had control, to some extent, of the cattle which the company was transporting, and assumed the duty of looking after the condition of the cattle, yet we do not regard the relation existing between him and the company as that of employee and employer.   The relation between them was that of carrier and passenger.   The declaration charges that appellee was a passenger, and we think the evidence tends to sustain the allegation.

It does not appear whether the appellee had what is called a drover's pass or not.   A person who is traveling, with the consent of the railroad company, upon a freight train in charge of stock or goods carried by the company for him, is a passenger.   (*I., B. & W. Ry. Co.* v. *Beaver*, 41 Ind. 493; *Lawson* v. *Chicago, St. P., M. & O. R. R. Co.* 64 Wis. 447).   Even where such a person is traveling in charge of cattle on a drover's pass, he is a passenger for hire; the consideration of his passage is the service he renders in taking care of the cattle, or the charge made against him or his employer for shipping the cattle.   (*Railroad Co.* v. *Lockwood*, 17 Wall. 357; *Indianapolis, etc. R. R. Co.* v. *Horst*, 93 U. S. 291; *C., P. & A. R. R. Co.*

v. *Curran,* 19 Ohio St. 1; 3 Am. & Eng. Ency. of Law, p. 16, and cases cited in notes; *L. S. & M. S. R. R. Co.·v. Brown,* 123 Ill. 162). A carrier will be held to the same strict accountability for the negligence of its servants resulting in injury to a passenger who is lawfully and properly on a freight train, as governs its liability for such negligence when the transportation is upon a train devoted to passenger service exclusively. (*Chicago and Alton Railroad Co.* v. *Arnol,* 144 Ill. 261).

Being a passenger, appellee was not chargeable with notice of defects in the construction or condition of the cars. "As to the selection of suitable machinery and cars, the fitness of the road both as to manner of construction and materials used, and in the use of all appliances adopted for the government or moving of trains, and as to the retention of competent and faithful servants, the carrier of passengers is obligated to use the highest reasonable and practicable skill, care and diligence." (*Chicago and Alton Railroad Co.* v. *Pillsbury,* 123 Ill. 9; *Pennsylvania Co.* v. *Roy,* 102 U. S. 455).

The happening of an accident to a passenger during the course of his transportation raises a presumption that the carrier has been negligent. The burden of rebutting this presumption rests upon the carrier. Undoubtedly the law requires the plaintiff to show that the defendant has been negligent. But, where the plaintiff is a passenger, a *prima facie* case of negligence is made out by showing the happening of the accident. If the injury to a passenger is caused by apparatus wholly under the control of the carrier and furnished and applied by it, a presumption of negligence on its part is raised. (*Gleeson* v. *Virginia Midland Railroad Co.* 140 U. S. 435; *Miller* v. *Ocean Steamship Co.* 118 N. Y. 199; *Galena and Chicago Union Railroad Co.* v. *Yarwood,* 15 Ill. 468, and 17 id. 509; *Chicago City Railway Co.* v. *Engel,* 35 Ill. App. 490; *Pittsburg, Cincinnati and St. Louis Railway Co.* v. *Thompson,* 56 Ill. 141; *Eagle Packet Co.* v. *Defries,* 94 id. 598; *North Chicago*

*Street Railway Co.* v. *Cotton*, 140 id. 486.)   Proof that plaintiff was a passenger, that the accident happened, and that the injury was inflicted, imposes upon the carrier the duty to explain or account for the accident, and to prove that it resulted from a cause for which the carrier should not be held responsible.   (*Railway Co.* v. *Engel*, *supra; Railway Co.* v. *Thompson, supra*).   The circumstances of exculpation are its matter of defense.   (*Gleeson* v. *Railroad Co. supra*).

Here, an injury was proven to have happened to a passenger while descending from a train of appellant's cars in the manner and under the circumstances already stated.   We think that a *prima facie* case of negligence was made out, sufficient to throw upon appellant the burden of proving that the injury was not its fault. Whether or not the defendant offered such explanation of the accident as to relieve itself from the charge of negligence, and whether or not the plaintiff exercised due care for his own safety, were questions of fact for the jury, and were submitted to them by the court under proper instructions.

Complaint is made that several other instructions asked by appellant were refused.   Without entering into a critical examination of all these instructions, we deem it sufficient to point out two defects in them which justified the action of the court in refusing them.   In the first place, they undertake to tell the jury that certain specified facts constitute negligence.   It is for the jury to determine whether the defendant has been guilty of negligence under all the evidence in the case.   The question is one of fact, and the facts are for the jury.   It is not the province of "the court to tell the jury that certain facts constitute negligence." (*Pennsylvania Co.* v. *Frana*, 112 Ill. 398).   In the second place, the court was asked to instruct the jury, that the evidence applicable to each separate count of the declaration was not sufficient to sustain plaintiff's charge of negligence as made in that

count.    These instructions were not proper because by them the court was made to pass upon the sufficiency of the evidence instead of leaving it to the jury to pass upon it.    They were in no way different from the first instruction asked by the defendant, except that they refer to each count of the declaration instead of referring to the whole declaration.

An objection was made to certain testimony admitted by the court on behalf of plaintiff, which we would be inclined to regard as well taken under the doctrine of the case of *Wabash Western Railway Co.* v. *Friedman,* 146 Ill. 583, if the record did not show a waiver by appellant of the right to insist upon the objection.    Appellee asked one of his witnesses what were the average weekly earnings of a cattle drover traveling with and caring for cattle shipped on cars; and he was allowed to answer over the objection of appellant, to which ruling exception was taken.    The objection was that there was no allegation in the declaration of special damages by reason of the loss of wages.    On the morning after the evidence was introduced, counsel for appellee admitted in open court, that the evidence might be subject to technical objection, and made a motion that it be stricken out, and excluded from the jury, and proposed to ask an instruction to the jury to disregard it, but counsel for appellant opposed the motion, and objected to the exclusion of the evidence, and the court overruled the motion. We fail to see how counsel for appellant can now complain, that the evidence was 'allowed to remain in the case, when they themselves opposed its exclusion and objected to its withdrawal from the consideration of the jury.

Finding no error in the record sufficient to justify a reversal of the judgment, we are of the opinion that the judgment of the Appellate Court should be affirmed, and it is accordingly so ordered.    *Judgment affirmed.*