## Chicago City Ry. Co. v. P. H. O'Donnell, Adm'r.

1. NEGLIGENCE—*A Question for the Jury.*—The question of the negligence of a street car conductor in ordering a boy to get off a moving car is a matter peculiarly for the consideration of the jury.

2. SAME—*Enough to Justify a Verdict if Negligence of Person Charged is an Efficient Cause Without Which Injury Would Not Have Occurred.*—Where an injury is the result of the concurrent negligence of two parties, it is enough to justify a verdict for the plaintiff that the negligence of the party charged was an efficient cause, without which the injury would not have occurred.

3. SAME—*Ordinary Negligence May be Shown under an Allegation of Willful Negligence.*—The charge of willful, wanton and reckless negligence includes ordinary negligence, which can be properly shown under the pleading.

4. PROXIMATE CAUSE.—*A Question for the Jury.*—Where the negligence of two parties has contributed to an injury it is a question for the jury to say whether it was the negligence of one or of the other that was the proximate cause of the injury.

5. PRACTICE—*When Plaintiff May Prove a Part of His Charge in Torts.*—In torts, the plaintiff may prove a part of his charge if the averment is divisible and there be enough proved to support his case.

Trespass on the Case.—Death from negligent act. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed October 8, 1903.

Chicago City Ry. Co. v. O'Donnell.

Statement.—Appellee's intestate, Michael B. Rowen, was killed by one of appellant's electric cars January 5, 1900, on Root street near Wentworth avenue, Chicago, by reason, as is alleged in the second count of the declaration, of the wanton and reckless negligence of the motorman of the car which caused the injury; also, as alleged by an additional count,

" That Michael B. Rowen was a minor, to wit, of nine years, and was then and there riding, but not as a passenger for hire, upon one of the defendant's east-bound cars which it was operating along said street railway, and while said car was running at such a high rate of speed a short distance west of Wentworth avenue as to make it dangerous for a person to alight therefrom, defendant's conductor in charge of said car then and there willfully, wantonly and recklessly, by ordering said Michael B. Rowen to get off said car, and by a threatening and menacing attitude toward him, and by attempting to strike and grab him, thereby compelled him to jump from said car, and in doing so said Michael B. Rowen was thrown and fell with such great force and violence upon defendant's west-bound track as to render him helpless; and while he was so lying in a helpless condition upon said west-bound track defendant, through certain of its other servants, was then and there running another car of defendant's toward the point where deceased was so lying upon said track; that said Michael B. Rowen was so lying upon said track when said west-bound car was a sufficient distance away so that defendant's servants in charge thereof by the exercise of ordinary care could have discovered his presence and have avoided injuring him, but defendant's last mentioned servants then and there wantonly, recklessly and negligently ran said car upon and over said Michael B. Rowen and he was thereby then and there so crushed and mangled that he died as a result thereof a short time afterward."

Appellee brought suit to recover damages for the mother, brothers and sisters of said intestate, on a trial of which he recovered a verdict of $5,000, and, after a remittitur of $1,500, a judgment for $3,500, from which this appeal is taken.

At the close of the plaintiff's evidence, and again at the close of all the evidence, defendant's counsel moved the

court to instruct the jury to find it not guilty, which motions were respectively overruled.

Among other instructions for the plaintiff the court gave the following, to wit :

" The court instructs the jury that if you believe from the evidence that defendant's east-bound car, at the time and place in question, was running at such a high rate of speed as to be dangerous for deceased, or any ordinary person so situated, to jump from said car, and that said conductor, while acting within the scope of his authority as such conductor, if he was so acting, willfully and wantonly compelled deceased to jump from said car, in manner and form as charged in the declaration, if he did so, and while it was running at such rate of speed, and that said conductor's conduct in this regard showed a reckless disregard of deceased's safety, and that deceased was thereby thrown down on the adjoining track and rendered helpless, and while so lying upon said track was run over and killed by the west-bound car before it could be stopped, then you should find the defendant guilty even though you should find from the evidence that there was no fault upon the part of the motorman of the west-bound car."

WILLIAM J. HYNES, SAMUEL S. PAGE and WATSON J. FERRY, attorneys for appellant; MASON B. STARRING, of counsel.

JAMES C. McSHANE, attorney for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

The claims of appellant are, first, that the verdict is not justified by the evidence; and, second, that the court erred in the giving of the instruction quoted in the statement.

The evidence in substance shows that deceased, who was a newsboy, about nine and one-half years of age, with papers under his arm, near 5:30 P. M., January 5, 1900, got upon the step of appellant's east-bound electric car, at the intersection of Root street with the Fort Wayne railway tracks, in Chicago. The conductor, at the time, was off the car to flag it across the railroad tracks, and as the car passed the tracks he got on its front platform and passed through the car collecting fares. When the conductor had finished collecting the fares, he came out upon the rear

Chicago City Ry. Co. v. O'Donnell.

platform and stood there, near its center, as the car proceeded easterly on Root street at a speed variously estimated by the witnesses at from seven or eight miles to as high as fifteen or twenty miles per hour, some of the witnesses also stating that the car was going "full speed, almost full speed," "about as fast as it could go;" others that it was going "fast" and "pretty fast." The conductor testifies that the highest speed of this car was twelve miles per hour. Deceased was on the step to the conductor's left, clinging to a gate which closed the entrance to the car on that side. Between the conductor and deceased stood a passenger, a young man named Andrews, who concealed by his body, as he admits he did purposely, the boy from the conductor. As the car came near Wentworth avenue, and the boy had ridden almost five blocks, the conductor's attention was attracted to the boy, Andrews says, by the boy whistling, but the conductor says, because he heard Andrews speak to somebody. No one else was on the platform except Andrews and the conductor. Andrews testifies, in substance, that when the boy whistled the conductor turned toward him and said to the boy, " Get off, there," and that he, Andrews, spoke up to the conductor and said the car was going too fast, whereupon the conductor raised his hand as though he was going to strike the boy; that he was then right close to the boy; that the conductor was close enough to reach the boy when he raised his hand and moved toward the boy. He also further testified as follows:

" Q. Tell us generally just what did he do. A. He raised his arm that way (illustrating by holding right arm from shoulder to elbow nearly straight out to the right from body and with the forearm nearly vertical thereto, the hand being open and fingers outstretched, palm to front and fingers a little lower than head).

Q. When he raised his arm that way which way did he go? A. Toward the boy.

Page : That is, he shows an uplifted hand ?

McShane : Which way did he move his hand when he had it uplifted ? A. Toward the boy."

Also that when the conductor raised his hand and walked toward the boy that the boy let go—jumped off—that his feet slipped out from under him and he fell backward—fell on the west-bound track, where he was run over and killed by another car going in a westerly direction. There was no other witness, on the part of the plaintiff, as to the conductor's actions, movements and language at this time, and on behalf of appellant there is no other witness as to these matters, except the conductor. The conductor positively denies that he ordered the boy to get off, and in this connection he testifies as follows:

"I didn't hear any whistle along there. After I heard this speaking, I said, 'Who have you got back of you?' Then this young man standing on the platform moved aside toward the door, and I saw a boy hanging on the hand-rail of the car next to the gate; the gate is fastened to the end. I said to the boy, 'What are you doing there?' just like that. The young man said, 'Oh, let him ride.' I didn't say anything more just at that time or directly after that. The boy was on the car at this time. When I called to him, 'What are you doing there?' I was standing in the same place where I came out of the car; standing in the middle of the platform, the usual place. When he said, 'Oh, let him ride,' the boy moved, leaned forward like, like if he was going to let go or fall off; he leaned forward on the outside body of the car; he had hold of the hand-rail. When he made that movement I said to him, 'Hold on, there.' At the same moment he swung aside and jumped off. I was then standing in the same place; I hadn't moved any toward him. I didn't at any time tell him to get off. I didn't want him to get off."

As to minor details of the evidence of Andrews, he is in some respects corroborated by other evidence on behalf of the plaintiff, as well as by some of the appellant's evidence. There is also evidence on behalf of the appellant tending in some degree to impeach Andrews, because of alleged contradictory statements made by him. The evidence of the conductor as to other minor matters is, in some respects contradictory and unreasonable, though it is not without support in some minor details. We have carefully read and considered all the evidence in this regard in the light

of counsel's arguments, and conclude that in so far as concerns the charge of negligence of the conductor in ordering the boy to get off the car, it presents a matter peculiarly for the consideration of the jury. If the jury believed the evidence of Andrews and did not believe the evidence of the conductor, then this charge of negligence, as we think, is sustained. We regard the evidence of the conductor, when he says, " The young man said, ' Oh, let him ride.' I didn't say anything more just at that time or directly after that," as very significant and corroborative of Andrews' testimony that the conductor ordered the boy to get off the car. If the conductor did not tell the boy to get off or make some movement toward the boy which indicated such a wish on the part of the conductor, or assume a threatening attitude toward the boy, why should Andrews have said, as the conductor says he did, " Oh, let him ride." We think it evident from this testimony that the conductor either ordered the boy off the car or made some threat, by action or otherwise, which caused the boy to jump.

There is a great mass of evidence in the record bearing upon the charge of negligence of the motorman of the west-bound car which is conflicting in many respects, but in view of the conclusion we have reached, it seems unnecessary to further refer thereto.

The negligence of the conductor being, as we think, established by the evidence, and it being also apparent that his negligence was the proximate cause of the boy's death, it is immaterial whether the motorman of the west-bound car was, or not, negligent. But if it be conceded that the motorman of the west-bound car was not negligent, it would then follow conclusively, from the evidence referred to, that the negligence of the conductor was the proximate cause of the boy's death, there being no claim that the boy was negligent. Furthermore, if the motorman was negligent and it contributed to the boy's death, still it was a question for the jury to say whether his or the conductor's negligence was the proximate cause, and, as we have seen,

the evidence is sufficient to charge the conductor. It is enough to justify the verdict in this regard, that the conductor's negligence was an efficient cause, without which the injury would not have occurred. R. R. Co. v. Dudgeon, 184 Ill. 487; Village of Carterville v. Cook, 129 Ill. 152.

It is argued for appellant in effect that because the first count of the declaration under which the case was tried is based upon the alleged negligence of the motorman of the west-bound car, and the additional count charges negligence of the conductor in " willfully, wantonly and recklessly " ordering deceased to get off the car, and thereby compelling him to jump from the car and fall upon the west-bound track in a helpless condition, and while so lying, the defendant's servant in charge of the west-bound car " wantonly, recklessly and negligently " ran said car upon and over him, etc., and that inasmuch as the proof fails to show that the motorman of the west-bound car was negligent, there could be no recovery under either count, for the reason that the first count has no support by the evidence, nor has the latter charge of the additional count, namely, the negligence of the motorman of the west-bound car, any support, whereas, before there could be a recovery under the additional count, the plaintiff must show that both the conductor and motorman were negligent as charged. The instruction for plaintiff quoted in the statement is in direct conflict with this contention, and if counsel are correct in this position, the case should have been taken from the jury. In considering this claim, it will be assumed that the evidence fails to show that the motorman of the west-bound car was negligent.

It is said that the additional count states but one cause of action, based upon two acts of wanton and willful negligence charged to have been conjointly committed, and that the death of the intestate was the result of the concurrence of both. We think not, but that the contrary is apparent from this count. It states two complete and distinct causes of action; the first, based upon the negligence of the conductor prior, in point of time, to, and in no way directly

connected with or related to the acts of the motorman; and the second, based upon the negligence of the motorman, which is subsequent in point of time to, and in no way directly related to nor dependent upon the act or conduct of the conductor. The charge that the latter was negligent might be entirely eliminated from the count, and still it would state a good cause of action. Also, if that charge remained and the charge that the motorman was negligent be eliminated, the count would be good. The two charges are clearly divisible, and the acts were not conjointly committed. This being true, the authorities cited by appellant's counsel have no application. It is well settled that "in torts the plaintiff may prove a part of his charge if the averment is divisible and there be enough proved to support his case." Ry. Co. v. Spurney, 197 Ill. 476, and cases cited; see, also, R. R. Co. v. Blumenthal, 160 Ill. 40–7; and Ill. Steel Co. v. Schymanowski, 162 Ill. 457.

It is further claimed that it being alleged that the conductor acted willfully, wantonly and recklessly, the plaintiff was bound to prove this allegation strictly, and also that, as it is alleged, deceased was not a passenger, there could be no recovery unless the evidence shows his death was the result of some willful or wanton act of appellant's servant. As to both these claims it is sufficient to say that, in our opinion, the evidence of Andrews, to which reference has been made, if believed by the jury, and of his credibility they were the judges, was sufficient to justify a finding that the acts of the conductor were not only reckless, but willful and wanton. It appears from the evidence that the conductor well knew the danger to which the boy would be exposed from passing cars in case he should get off, fall or be thrown upon the west-bound track, and notwithstanding this knowledge, he either ordered the boy to get off the car or assumed such a threatening attitude toward him as to cause the boy to jump from the car when it was moving at a very rapid rate of speed, whereby he was caused to fall upon the west-bound track in front of a moving car thereon. The jury might well have found that these allegations of the declaration were sustained by the evidence.

But even if it could be said that the evidence does not show that the conductor acted willfully, wantonly or recklessly in view of the evidence that the car was only going seven or eight miles per hour, still if the conductor ordered the boy to get off the car while it was going at that rate of speed, we are of opinion that his action was negligent, to say the least, and sufficient to sustain the judgment, notwithstanding the allegations of the declaration referred to. The conductor, seeing the boy in the position that he was upon the car, although he was not a passenger, was bound to use ordinary care to see that he was not injured. If his order for the boy to get off the car, or the attitude which he assumed to the boy, being such as to cause the latter to believe he was expected to leave the car, under the circumstances shown, was negligence, then the verdict and judgment are correct. The charge of willful, wanton and reckless negligence includes ordinary negligence, which could be properly shown under the pleading. R. R. Co. v. Phillips, 66 Ill. 548–52; R. R. Co. v. Shaw, 103 Ill. App. 662–7.

No claim of variance in this regard was made on the trial.

There being no other claims of error in the record, we think the judgment should be and it is affirmed.