## Adele Kanter, Administratrix, Appellee, v. St. Louis, Springfield & Peoria Railroad, Appellant.

### Gen. No. 6,747.

1. APPEAL AND ERROR, § 426*—*when error in sustaining demurrer cannot be urged on appeal.* Where the action of the trial court in sustaining a demurrer to defendant's plea is not assigned as error upon the record, such contention cannot be considered on appeal.

2. CARRIERS, § 462*—*when doctrine of res ipsa loquitur applies to derailment.* In an action against an electric interurban railway company to recover for the death of plaintiff's intestate, the complaint alleging that while intestate was riding on defendant's car as a passenger, in the exercise of due care, by reason of defendant's negligence and recklessness in managing and operating the car and without warning to the intestate the car became derailed and wrecked and began to burn and by reason of the derail-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ment intestate was caught in the wreckage and received injuries and burns resulting in his death, where the evidence showed that the car left the track at a point between stations at which the rail was 6 inches out of line, ran about 300 feet, partly on the ties and partly on the roadbed, breaking ties and also telegraph poles on each side of the track, breaking a 3-foot concrete bridge-abutment and finally landing on its side in a ravine below the track where it was burned by the fire from an overturned stove, causing the death of intestate who was pinned in the wreckage by trunks, it was *held* that the doctrine of *res ipsa loquitur* applied.

3. CARRIERS, § 462*—*when prima facie case of negligence is established on derailment.* In an action against an electric interurban railway company to recover for the death of plaintiff's intestate, killed while a passenger on defendant's car, proof that the car left the track at a point between stations at which one of the rails was 6 inches out of line, ran about 300 feet partly on the ties and partly on the side of the roadbed, splintering the ties, breaking a telegraph pole on each side of the track, breaking off a 3-foot concrete bridge-abutment and finally landing on its side in a ravine below the track, where it was burned by fire from an overturned stove, causing the death of intestate who was pinned in the wreckage by trunks, establishes a prima facie case of negligence sufficient to justify a verdict against defendant, and places on the defendant the burden of overcoming the presumption by evidence.

4. CARRIERS, § 346*—*when carrier is liable for negligence causing injury.* A carrier of passengers is liable for the death of a passenger in a derailment proximately caused by its negligence in the management, control and operation of its car combined with the intervening acts of unknown persons in tampering with the track.

5. CARRIERS, § 278*—*what duty carrier owes passenger.* A carrier owes a passenger the duty of exercising the highest degree of care consistent with the practical operation of its road and the mode of conveyance adopted.

6. CARRIERS, § 348*—*when contributing negligence on derailment. is question for jury.* In an action against an electric interurban railway company to recover for the death of plaintiff's intestate, killed by the derailment and burning of defendant's car in which he was riding, whether evidence introduced by defendant to show that the derailment was caused by the vandalism of unknown persons is sufficient to relieve defendant from the charge of negligence contributing to bring about the accident, *held* for the jury.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

7. CARRIERS, § 377*—*when care in operation on derailment is question for jury.* In an action against an interurban electric railway company to recover for the death of plaintiff's intestate, killed as the result of a derailment of the car on which he was a passenger, caused by a rail being 6 inches out of alignment, it is for the jury to say whether or not a car equipped as this was with an electric headlight throwing a reflection 900 or 1,000 feet and having automatic brakes and so operated that the motorman did not see the rail until 25 feet from it, was operated with the highest degree of care consistent with the practical operation of the road and the mode of conveyance adopted.

8. CARRIERS, § 476*—*when evidence establishes negligence resulting in derailment.* In an action against an electric interurban railway company to recover for the death of plaintiff's intestate, killed by the derailment and burning of the car on which he was riding as a passenger, evidence examined and *held* sufficient to justify a finding that defendant was negligent in the control and operation of the car, and that such negligence combined with the intervening acts of parties unknown constituted the proximate cause of the accident and of the resulting death of the intestate.

Appeal from the Circuit Court of Peoria county; the Hon. CHARLES V. MILES, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 21, 1920. Rehearing denied June 25, 1920. *Certiorari* denied by Supreme Court (making opinion final).

HUNTER, PAGE & KAVANAUGH and BURTON & HAMILTON, for appellant.

WEIL & BARTLEY, for appellee; M. E. NEWELL, of counsel.

MR. JUSTICE HEARD delivered the opinion of the court.

This was an action of trespass on the case brought by Adele Kanter, as administratrix of the estate of Samuel C. Kanter, deceased, against the St. Louis, Springfield and Peoria Railroad, an electrically operated interurban railroad extending through Madison and other counties in Illinois. The suit was brought

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number,

to recover damages for the death of Samuel C. Kanter, which occurred on October 26, 1916, following the derailment of a car of defendant a short distance north of Edwardsville about 10 o'clock in the evening.

The declaration consisted of four counts. The first count averred that Samuel C. Kanter was a passenger on October 26, 1916, on the electric motor car of the defendant railroad extending through Springfield and beyond Staunton; that while riding upon the car, in the exercise of due care and caution, south of Staunton and near Edwardsville, by reason of the carelessness, negligence and recklessness of the defendant and without warning to the said Kanter, the car became derailed and wrecked and began to burn and by reason of said derailment the said Kanter became caught in said wreckage and was so injured and burned that he died.

The second count alleged that Kanter was a passenger on the car of the defendant and while riding, in the exercise of due care and caution, south of Staunton near Edwardsville, the defendant, by its servants, so carelessly, negligently and recklessly drove, operated and managed said car that it became derailed and wrecked, etc.

The third count was withdrawn by the plaintiff before trial.

The fourth count alleged that he became a passenger on defendant's car and that the defendant, a short distance south of Staunton and near Edwardsville, negligently and carelessly allowed and permitted the railroad and ties, rails, spikes and roadbed, composing said railroad, to be and become in an unsafe and dangerous condition so that the motor car was liable to become derailed and wrecked; that while Kanter was riding as a passenger for reward, in the exercise of due care and caution, said motor car because of the carelessness, negligence and mismanagement of said defendant became and was derailed and wrecked and

that the said Kanter was so injured and burned that he died.

It was averred that he left surviving him his widow and Edward, Robert and Jack Kanter, his children and next of kin.

To the foregoing declaration the defendant pleaded the general issue. It also filed a special plea setting out the Workmen's Compensation Law of New York, and that the deceased, Samuel C. Kanter, was a traveling salesman employed by a New York Company and that he was within the terms of the act, which provided that where the employee entitled to compensation be injured or killed by reason of the negligence or wrong of an employee not in the same employ, such injured employee, or in case of his death, his next of kin, may elect whether to take compensation under the act or to pursue the remedy against such other. The plea averred that plaintiff had not at any time, prior to the commencement of the suit, elected either to take compensation under said statute or to pursue her alleged remedy against this defendant for the alleged negligence complained of in the declaration. A demurrer to this plea was sustained and the defendant elected to stand by its plea.

The trial resulted in a judgment for $10,000 in favor of appellee.

Appellant contends in its brief and argument that is was error to sustain the demurrer to this plea. The action of the court in that regard is not assigned as error upon the record and therefore this contention cannot be considered by us.

The only other assignment of error argued by appellant in its brief and argument is "that the verdict and judgment are contrary to the overwhelming preponderance of the evidence."

We do not think there was any evidence tending to prove the fourth count of the declaration and the judgment must have been based upon the first and sec-

570    APPELLATE COURTS OF ILLINOIS.

Kanter v. St. Louis, Springfield & Peoria R. R., 218 Ill. App. 565.

ond counts, which are the counts where the charges of negligence were general, and the only question here is whether or not the evidence in the case is sufficient to sustain a judgment on these counts.

The evidence shows that deceased became a passenger on defendant's car at Springfield, Illinois, having purchased a ticket for St. Louis, Missouri. The train consisted of a single car in charge of a motorman and conductor.

The car left the track between Staunton and Edwardsville at a point where one of the rails was a half foot out of line; ran a distance of about 300 feet, part of the time upon the ties and part of the time on the side of the roadbed, tearing up and splintering ties, breaking two telegraph poles, one on the east and one on the west side of the track, striking and breaking off the 3-foot concrete abutment of a bridge and finally landing on its side in a ravine several feet below the level of the track, where it was burned by fire from an overturned stove.

Deceased at the time of the accident was riding in the front part of the car in the smoking compartment, which was separated by a partition from the main passenger compartment. He was in the exercise of ordinary care for his own safety. There were some trunks in the smoking compartment.

When the car was overturned deceased was pinned down by the trunks and before he could be extricated was burned to death.

Upon proof of these circumstances the question arises whether the doctrine of *res ipsa loquitur* applies.

In *Feldman v. Chicago Rys. Co.*, 289 Ill., on page 34 [19 N. C. C. A. 292], it is said: "The doctrine of *res ipsa loquitur* may be stated thus: When a thing which has caused an injury is shown to be under the management of the party charged with negligence and the accident is such as in the ordinary course of things will not happen if those who have such management

use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the parties charged, that it arose from the want of proper care. (*Chicago Union Traction Co. v. Giese,* 229 Ill. 260.) In the case just cited the first and second counts of the declaration charged that the defendant, by its servants, carelessly, improperly and negligently drove and managed a train consisting of two coaches so that the rear car struck the wagon of the plaintiff in which he was riding and thereby he received the injury complained of. In those two counts the charges of negligence were held to be general and it was held that the doctrine of *res ipsa loquitur* applied. The same rule is laid down in *O'Callaghan v. Dellwood Park Co.,* 242 Ill. 336. The charges of negligence in the first two counts in the case at bar are in substantially the same language as those in *Chicago Union Traction Co. v. Giese, supra.* It is charged by the first count that plaintiff, without fault or negligence on his part, was struck by and run into and over by defendants, who then and there so carelessly, negligently and improperly managed and operated said car that by reason thereof the car left the track and struck and collided with the plaintiff. The second count charges that the defendants so carelessly, negligently and improperly managed and operated the electric car that by reason thereof the car then and there collided, struck and ran against the plaintiff. The charges of negligence in these counts were general and the doctrine of *res ipsa loquitur* applies. The rule is that negligence is never presumed, but that the circumstances surrounding the case where the maxim of *res ipsa loquitur* applies amount to evidence from which the facts of negligence may be found; that is, in a case within the maxim of *res ipsa loquitur,* proof of the circumstances of such case and of the injury constitutes a prima facie case of negligence, and will justify a verdict unless such prima facie case is overcome by proof showing that

the party charged is not at fault. (*Chicago Union Traction Co. v. Giese, supra; Chicago Union Traction Co. v. Newmiller,* 215 Ill. 383; *Chicago City Ry. Co. v. Rood,* 163 Ill. 477; *New York, C. & St. L. R. Co. v. Blumenthal,* 160 Ill. 40; *Hart v. Washington Park Club,* 157 Ill. 9.) The burden rested upon defendants in error to overcome the presumption of negligence arising from the circumstances in this case.''

In this case the charges of negligence in the first and second counts of the declaration were general. The cars, tracks and equipment were under the control and management of appellant and the accident was such as in the ordinary course of things would not happen if those who had such control and management used proper care, and hence under the evidence heretofore mentioned the doctrine of *res ipsa loquitur* applies.

Applying this doctrine to such evidence, a prima facie case of negligence sufficient to justify a verdict was made against appellant and the burden rested upon it to overcome this presumption by evidence. Appellant attempted to overcome this presumption and prove that the derailment and death of deceased was the result of acts of vandalism committed by persons unknown.

The evidence clearly shows that at a point immediately north of the place of derailment, a curve, described by plaintiff's witness Shaffer as a 35-minute curve and by defendant's witness Martin as a 1-degree curve, began, which extended about 300 feet down a slight grade to a bridge over a small creek or bottom. Plaintiff's witness Shaffer, who surveyed the premises, describes the grade as a 7/10 of 1 per cent grade. Beginning at this curve, which at the northerly end was about 300 feet from the bridge, spikes were found, immediately after the accident, removed from the ties and rails for a distance of approximately 80 feet. In the first 40 feet the spikes were pulled by persons unknown from each side of the rail and in the 40 feet

nearest to the bridge, the outside spike was pulled from the north rail from all of the ties. In all 45 spikes were found, which had been drawn, leaving straight, clean, vertical holes. The point where the car went off from the rails was about 40 feet from the beginning of the curve. North of the place where the marks of the car were first discerned on the track, at one place one spike had been driven under the rail from the inside, and a few ties further on from that place, two other spikes had been placed under the rail, one on top of the other, crosswise in position, and these had also been driven from the inside, that is, their heads were inside of the rail and the points forced under the rail. This caused that rail to be 6 inches out of alignment with the other rails, and a few feet from there was the place where the car left the track and went onto the right of way.

Proof of these facts was sufficient to overcome the prima facie case and require a verdict for appellant unless there was other evidence in the case showing negligence on the part of appellant in the control, management or operation of the car in question which, combined with the acts of vandalism of the persons unknown, constituted the proximate cause of the accident.

In *Seith v. Commonwealth Electric Co.*, 241 Ill., on page 259, it is said: "The rules for determining whether a negligent act or omission is the proximate cause of an injury are well established and have been applied by different courts in numerous cases to different conditions of fact. There has been practically no difference of opinion as to what the rules are, and they may be briefly stated as follows: The negligent act or omission must be the cause which produces the injury, but it need not be the sole cause nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which, in combination with it, causes the injury, or if it sets in motion a chain of circumstances and operates on them

574    Appellate Courts of Illinois.

Kanter v. St. Louis, Springfield & Peoria R. R., 218 Ill. App. 565.

in a continuous sequence, unbroken by any new or independent cause. The question is not determined by the existence or nonexistence of intervening events, but by their character and the natural connection between the original act or omission and the injurious consequences. To constitute proximate cause the injury must be the natural and probable consequence of the negligence, and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as a result of the negligence. It is not necessary that the person guilty of a negligent act or omission might have foreseen the precise form of the injury, but when it occurs it must appear that it was a natural and probable consequence of his negligence.''

In *Waschow v. Kelly Coal Co.*, 245 Ill., on page 519, it is said: ''When an injury proceeds from two causes operating together, the party putting in motion one of them is liable the same as though it was the sole cause. (Bishop on Non-Contract Law, secs. 39, 450.) The negligent act or omission must be one of the essential causes producing the injury but need not be the sole cause nor the last or nearest cause. 'It is sufficient if it concurs with the other cause acting at the same time, which in combination with it causes the injury.' (*Seith v. Commonwealth Electric Co.*, 241 Ill. 252, and cases cited; *American Exp. Co. v. Risley*, 179 Ill. 295; *Miller v. Kelly Coal Co.*, 239 Ill. 626; Bishop on Non-Contract Law, sec. 455.) Furthermore, what is the proximate cause is ordinarily a question of fact, to be considered by the jury from all the attending circumstances. (*Illinois Cent. R. Co. v. Siler*, 229 Ill. 390; *Pullman Palace Car Co. v. Laack*, 143 Ill. 242; Bishop on Non-Contract Law, sec. 455.)''

In *Fisher v. Chicago, R. I. & P. R. Co.*, 290 Ill. 58, it is said: . ''Where an injury proceeds from two causes operating together, the party putting in motion one of them is liable the same as though it were

the sole cause. The negligent act or omission must be one of the essential causes producing the injury, but need not be the sole cause nor the last or nearest cause.''

In *Sullivan v. William Ohlhaver Co.*, 291 Ill. 361, it is said: ''It is contended by plaintiff in error that the negligent act of Feece turning into the street without warning constituted a separate, independent and intervening cause of the accident, and that there is no evidence showing the act of plaintiff in error to be the proximate cause of the injury. The evidence was sufficient to establish the conclusion of the fact that the injury was the result of the combined negligence of plaintiff in error and Feece.  *  *  *  The mere fact that the injury would not have happened but for the negligence of Feece is not sufficient to exonerate plaintiff in error, for if defendant in error was injured by the combined negligence of both parties he can maintain an action against either.''

Edward L. Gass, who was the motorman in charge of the car, testified that as he approached the place of derailment he observed that a rail on the right-hand side 25 feet in front of him was half a foot out of line; that the car was equipped with an electric headlight which when set high enough cast a reflection for 900 or 1,000 feet, but that he could not see the rail further than 30 feet in front of him; that the light could be regulated by setting it higher or lower to reflect a greater or shorter distance ahead; that he as motorman had control of the regulation of the carbon; that he had it carrying high so that he could see a great distance ahead; that turning it up gives you a chance to see further ahead and turning it down gives you a chance to see the track closer to you; that when he saw the rail out of alignment he applied the automatic air brakes to the full extent, but was unable to stop the car before it landed down at the bottom of the grade at the bridge; that at Graney Siding, a little over half

a mile before reaching the place of derailment, he put off the power and did not put it on again. Witness was not interrogated and did not testify as to what he was doing, if anything, from the time he shut off the power at Graney Siding until he saw the rail out of alignment. He was not interrogated and did not testify as to whether or not he was watching the track ahead.

A. G. Wilcoxon, who at the time of the accident was chief dispatcher for appellant, in answer to the question, "How far ahead could you see rails with that headlight?" testified, "A headlight will throw a distance—that headlight will throw possibly a distance of 900 or 1,000 feet on the rails; the rails will shine; it would have a glaring effect." Of course if the motorman had sooner seen the defect in the track he would have sooner applied the brakes and so checked the speed of the car somewhat if not entirely before the derailment.

In *New York, C. & St. L. R. Co. v. Blumenthal,* 160 Ill., on page 49, the court says: "Whether or not the defendant offered such explanation of the accident as to relieve itself from the charge of negligence and whether or not the plaintiff exercised due care for its own safety were questions of fact for the jury, and were submitted to them by the court under proper instructions."

Appellant owed to deceased the duty of exercising the highest degree of care consistent with the practical operation of the road and the mode of conveyance adopted. Whether or not the evidence showed such an explanation of the accident as to relieve appellant from the charge of negligence contributing to bring about the accident was a question of fact for the jury. It was also a question of fact for the jury whether or not a car equipped as this car was and so operated that a rail 6 inches out of alignment was not seen by the motorman until within 25 feet of it was operated

SECOND DISTRICT—MAY, 1920.        577

United Romanian M. M. & G. Store v. Abramson, 218 Ill. App. 577.

with the highest degree of care consistent with the practical operation of the road and the mode of conveyance adopted. The jury have evidently found against appellant on these questions.

Under the evidence the jury were justified in finding that appellant was negligent in the management, control and operation of the car in question and that such negligence, combined with the intervening acts of perties unknown, constituted the proximate cause of the accident and resultant death of deceased.

The judgment is affirmed.

*Affirmed.*

NIEHAUS, J., took no part.