## Flora Klaustermeier, Appellee, v. St. Louis, Springfield & Peoria Railroad, Appellant.

1. CARRIERS—*when verdict for passenger in action for personal injuries not disturbed.* In an action by a passenger for injuries received in a wreck due to the derailment of the car in which she was riding, evidence introduced by defendant to show that the derailment was intentionally caused by the loosening of the rails by some unknown person *held* insufficient to warrant interference with a verdict for plaintiff.

2. CARRIERS—*when verdict for passenger in action for personal injuries not inconsistent with findings.* In an action for injuries received by a passenger in a wreck due to the derailment of the car in which she was riding, which was defended on the ground that the wreck was due to the malicious act of some person in removing spikes from the rails, a verdict for plaintiff was not inconsistent with conditions found where the structure of the car was such that it could have caused the disarrangement of the ties and roadbed as shown after it was derailed.

3. CARRIERS—*application of doctrine res ipsa loquitur to injury to passenger.* In an action for personal injuries by a passenger, evidence establishing the relation of passenger and carrier and the fact that the car in which she was riding was derailed with no justifiable reason being shown for such derailment, warrants application of the doctrine of *res ipsa loquitur.*

4. DAMAGES—*when verdict not excessive in action for injury to passenger.* A verdict for $3,500, in an action for injuries received by a passenger in a wreck which resulted in pains in her back and in a weak and nervous condition from the shock and injuries received, *held* not so excessive as to show that the jury were governed by prejudice or passion.

Appeal from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the March term, 1920. Affirmed. Opinion filed October 28, 1920. Modified and refiled and rehearing denied December 22, 1920. *Certiorari* denied by Supreme Court (making opinion final).

BURTON & HAMILTON and TERRY, GUELTIG & POWELL, for appellant.

SPRINGER & BUCKLEY and GEERS & GEERS, for appellee.

Mr. Presiding Justice Boggs delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Madison county, for $3,500 in favor of appellee for damages for alleged personal injuries claimed to have been sustained on October 26, 1916, while a passenger of appellant, the car on which appellee was riding having been derailed and turned over near Mooney Branch, about a mile northeast of Edwardsville.

The declaration as filed was amended and three additional counts added. The original declaration alleged the duty of appellant to keep its track in safe condition and the failure so to do, and alleged that thereby it became out of repair and that when said car passed over the same the rails were caused to spread and the car was thrown from the track, causing the injury complained of. The first additional count charges the negligent operation of said car and the consequent injury and damage. The second additional count charges the operation of said car at an excessive rate of speed. The third additional count charges negligence on the part of appellant in that it carelessly, etc., allowed its railroad, ties, spikes, rails and roadbed, etc., to be and become in an unsafe and dangerous condition upon which to operate cars, etc. All of said counts allege that appellee was a passenger on appellant's car and was in the exercise of due care for her own safety. To said declaration the general issue was pleaded.

It is admitted by appellant that appellee was a passenger, having boarded appellant's car in company with her husband and child at Staunton, to be carried to Edwardsville. They occupied a seat on the left-hand side of the car about the center of the passenger compartment. Appellee sat next to the aisle. The car was scheduled to leave Staunton at 9:25 p. m. and arrive at Edwardsville at 10:10 p. m., a distance of

about 18 miles. There is some conflict in the evidence as to whether or not the car left Staunton on time. The speed at which the car was traveling immediately prior to the accident is variously estimated from 20 to 60 miles per hour. Witnesses for appellee testified that the car was going from 50 to 60 miles per hour while those for appellant testified that it was going from 20 to 25 miles per hour.

There is an incline on appellant's track about half a mile in length, extending from Grainey Siding down into Mooney Valley and the track makes a slight curve about 350 feet east of the Mooney Bridge. This bridge is about 30 feet long and spans the branch at an elevation of about 20 feet above the water. The car was derailed at a point about 300 feet east of Mooney Bridge. A freight train of fifteen cars had passed over the track at this point, going from Edwardsville towards Staunton about 30 to 40 minutes prior to the accident.

When the car upon which appellee was riding reached the curve above referred to, it left the rails, the lights went out and the car bumped along over the ties, crashing into a telephone or trolley pole on the north side of the track, breaking off the pole; this caused the car to be deflected to the south side of the track where it crashed into and broke off another trolley pole. It also tore away a heavy wooden stringer from the side of the bridge and fell from the bridge into the branch below and lay upon its side. Appellee was thrown from her seat to and upon the seat in front of her, causing an injury to the face and other external injuries. She, as other passengers, was assisted through the windows to the top or upper side of the car, thence to and upon the ground. A relief train conveyed the passengers to Edwardsville and appellee was given a hasty examination by Dr. Wahl, the company's doctor. She was then taken home in an automobile. At that time appellee did not appear to have

suffered any serious injury. After retiring, however, she complained of pains in her back and from which she testified she had not recovered. She also testified that she sweats profusely from her head to her waist, and is very nervous and weak as a result of the shock and injury received in the accident. Certain other witnesses corroborate appellee in her testimony as to her physical condition. The gist of the defense is that the accident was caused by some person or persons who, wishing to cause a derailment, pulled a number of spikes from the rails of appellant's track, thereby loosening the rails so that the track might spread. A large part of the appellant's evidence is devoted to the number of spikes pulled, the character of the holes left, indicating that spikes were pulled by a claw bar designed for the purpose. Appellant introduced testimony to the effect that the night prior to the accident a claw bar had been stolen from a section house of appellant and that a short time after the accident a claw bar had been found in the weeds adjacent to the place where the accident occurred. The spikes pulled were described as straight, indicating that they were pulled by such an instrument and a mark such as a claw bar makes was shown to have been made upon some of the ties. The spikes pulled and those loosened doubtless had the appearance of being pulled with a claw bar and the theory advanced by appellant seemed quite plausible, but in the absence of more satisfactory evidence to establish it, we are not inclined to disturb the verdict of the jury. Nor is the verdict of the jury inconsistent with the conditions found. The car in question weighed about 80,000 lbs. and according to the testimony of appellee's witnesses came down the grade at a high rate of speed. The motor on said car was located under both trucks and was surrounded or inclosed in what is known as a motor casing or housing and this casing or housing extends to within about 10 inches of the ground or roadbed. When the

car left the track, this would permit of the motor casing or housing dropping so as to disarrange the ties and roadbed.

In *Shaw v. Chicago, R. I. & P. Ry. Co.,* 173 Ill. App. 110, it was said:

"It has been held that where the defendant has shown that it used the highest degree of care in the purchase and inspection of the particular article of equipment which subsequently broke, thus causing the accident, the presumption of negligence was rebutted; but we are referred to no case which holds that the inability or failure of a carrier to account for an accident in a *res ipsa loquitur* case is a sufficient defense. It will not avail to reply that the cause of the accident is a mystery."

The case before us justifies the application of the rule of *res ipsa loquitur.* The proof established the relation of passenger and carrier and that the car was derailed, with no justifiable reason therefor. This makes out a prima facie case the appellant was bound to overcome to succeed.

In *Feldman v. Chicago Rys. Co.,* 289 Ill. 34 [19 N. C. C. A. 279], the court said:

"The doctrine of *res ipsa loquitur* may be stated thus: When a thing which has caused an injury is shown to be under the management of the party charged with negligence and the accident is such as in the ordinary course of things will not happen if those who have such management use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the parties charged, that it arose from the want of proper care. (*Chicago Union Traction Co. v. Giese,* 229 Ill. 260.) * * * The rule is that negligence is never presumed, but that the circumstances surrounding the case where the maxim of *res ipsa loquitur* applies, amount to evidence from which the facts of negligence may be found; that is, in a case within the maxim of *res ipsa loquitur,* proof of the circumstances of such case and of the injury constitutes a prima facie case of negligence, and will

justify a verdict unless such prima facie case is overcome by proof showing that the party charged is not at fault. (*Chicago Union Traction Co. v. Giese, supra; Chicago Union Traction Co. v. Newmiller,* 215 Ill. 383; *Chicago City Ry. Co. v. Rood,* 163 Ill. 477; *New York, C. & St. Louis R. Co. v. Blumenthal,* 160 Ill. 40; *Hart v. Washington Park Club,* 157 Ill. 9.) The burden rested upon defendants in error to overcome the presumption of negligence arising from the circumstances in this case."

In *Vischer v. Northwestern El. R. Co.,* 256 Ill. 578, it was said:

"As a matter of proof, when an injury is shown and that it arose from something within the control of the carrier or from some danger which it was his duty to anticipate and provide against, a presumption of negligence on the part of the carrier or his servants arises. (*North Chicago St. Ry. Co. v. Cotton,* 140 Ill. 486; *New York, C. & St. L. R. Co. v. Blumenthal,* 160 Ill. 40; *Chicago City Ry. Co. v. Carroll,* 206 Ill. 318.) The presumption does not arise from the injury itself, but from the injury and the cause or source of it, but when the injury is proved and the cause is connected with the carrier a prima facie case is made out for the plaintiff. (3 Thompson on Negligence, sec. 2756.) The carrier is then called upon to meet and overcome the prima facie case, and this is often spoken of as the burden of proof, which, in the sense of the necessity of producing evidence to meet a prima facie case, passes from party to party as the case progresses, but the burden of establishing the truth of the issue by a preponderance rests and remains with the party having the affirmative. (*Egbers v. Egbers,* 177 Ill. 82.) If there is no evidence to meet a prima facie case it becomes conclusive and justifies a verdict, but if evidence is produced, then, on the whole case, the burden of proof is on the plaintiff to establish the averments of the declaration by a preponderance of the evidence."

In view of the holding in the foregoing case, we cannot say that the verdict is against the manifest weight

of the evidence. It is also contended by appellant that the remarks of appellee's counsel made during the trial and in argument to the jury constituted reversible error. We have examined the record in connection with this assignment of error and while we are of the opinion the trial court should have restricted counsel for appellee more than it did, still we do not believe the ruling of the court in this connection constitutes reversible error.

Lastly, it is contended by appellant that the verdict is excessive. If appellee's condition is such as the evidence on her part tends to show, we would not be warranted in reversing the judgment on that ground as we are not able to say that the jury in fixing the amount of this verdict were governed by prejudice or passion.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Judgment affirmed.*